```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY
```

ASHLEY FUNK,                      : Civ. No. 08-1841-NLH-JS
                                  :
                                  :
        Plaintiff,                :
                                  :
    v.                            : **OPINION**
                                  :
THE HARCOURT COMPANY              :
and JOHN DOES 1-5 and 6-10,       :
                                  :
                                  :
        Defendants.               :
                                  :

**APPEARANCES:**

Kevin M. Costello, Esquire
Deborah L. Mains, Esquire
LAW OFFICES OF KEVIN M. COSTELLO, P.C.
2090 East Route 70
Cherry Hill, NJ 08003

   *Attorneys for Plaintiff*

Deirdre E. McInerney, Esquire
Stephen J. Sundheim, Esquire
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103

   *Attorneys for Defendants*

**HILLMAN**, District Judge

    This matter comes before the Court on Defendant's Motion for Summary Judgment on Plaintiff's claims of sexual harassment and retaliation. For the reasons expressed below, Defendant's motion will be granted.

## BACKGROUND

Plaintiff, Ashley Funk, was employed by Defendant, Harcourt, Inc. ("Harcourt"),[1] in its warehouse facility in Bellmawr, New Jersey from approximately June 2006 until October 2007. Plaintiff was first hired as a temporary employee in the "Value Added Services" area of the warehouse. Then, in February 2007, Plaintiff was promoted to permanent employee status and was stationed at a computer terminal in the inventory section of the warehouse. In this position, Plaintiff reported to Warehouse Manager Michael Tolen.

In late June 2007, sexually explicit graffiti was found in an aisle of the warehouse by Plaintiff and another Harcourt employee. Some of the graffiti referenced Plaintiff's first name, Ashley, along with drawings of a penis and several sexually explicit phrases. Plaintiff reported the graffiti to Tolen, who directed the Maintenance Manager to immediately remove the graffiti and reported it to human resources. After the incident was reported to human resources no further investigation was done, and the identity of the person who created the graffiti was never determined.[2]

---

[1] Plaintiff named "The Harcourt Company" as a defendant. Defendant contends, and Plaintiff does not appear to contest, that the proper name is Harcourt, Inc.

[2] The June 2007 incident is not alleged or otherwise described in the Complaint in this matter. This version comes from Plaintiff's deposition and is not contested by Defendant.

Over three months later, on October 9, 2007, Plaintiff was involved in a confrontation with another Harcourt employee, Trottie Johnson.  Johnson, a forklift operator, did not have supervisory responsibilities and reported to another supervisor, not Tolen.  According to Plaintiff, she was seated at her work station when she noticed Johnson in a nearby aisle conversing with another employee.  After concluding his conversation, Johnson approached Plaintiff's workstation and stood behind her.  When Plaintiff asked if there was something she could do for Johnson he responded, "No, I just feel like slapping you in your face."  Plaintiff then asked, "Well why? And what's stopping you from doing it?"  Johnson allegedly replied, "I'm clocked in."  Plaintiff asked Johnson, "Well, are you scared because you're clocked in then?" and warned him "that if he slapped her, she would smack him back."

At that point, according to Plaintiff, Johnson slapped her in the face with his open hand.  Plaintiff then pushed Johnson and told him to get off of her.  In response, Johnson invited Plaintiff to hit him back, saying, "Well, go ahead, then.  You hit me back then."  When Plaintiff declined to do so Johnson said, "Here, right now, just punch me.  I'll let you get one in since I got one in."  When Plaintiff again refused to hit him Johnson walked away.

Plaintiff says that immediately after Johnson walked away,

she went to Tolen's office to report the incident. Tolen instructed Plaintiff that she needed to report the incident to Alice Thompson, the Director of Human Resources, who was conducting a meeting at the time. After the meeting concluded, Plaintiff reported the incident to Thompson, who said that she would speak to Johnson and instructed Plaintiff to return to work. Upon returning to her work station, Plaintiff claims that several unnamed employees made comments to her about the incident and her decision to report Johnson.

Later that day, Plaintiff contacted her father and told him about the incident. Her father then contacted the police, who went to the warehouse and interviewed Plaintiff. According to Plaintiff, she told the police that Johnson's slap was "medium," "like he meant it." The police report indicated that Johnson "smacked her lightly on the face" and that she elbowed him in response.[3] Plaintiff did not choose to press charges.

Upon learning of the incident from Plaintiff, Thompson launched an investigation. She interviewed Johnson, who admitted telling Plaintiff that he wanted to slap her and "patting" her on the face. He also claimed that Plaintiff hit him in the chest after he "patted" her. Thompson also interviewed three other

---

[3] To the extent the police report version of the incident differs from Plaintiff's testimony regarding the confrontation, we accept as true Plaintiff's version for purposes of the pending motion.

employees whom Plaintiff claimed witnessed the incident. The first said he did not see the incident. The second said she saw Johnson slap Plaintiff "like you would pat a baby." The third said that after Johnson would not leave her alone, Plaintiff asked him "why don't you do it? Are you scared?," after which Johnson slapped her. Plaintiff then poked Johnson in the chest and said "why the [f]*** did you slap me?," to which Johnson replied that they were friends and "always messed around."[4]

The following day, October 10th, Plaintiff was summoned to Tolen's office for a meeting when she reported to work. During the meeting, Tolen and Thompson asked Plaintiff to explain the events surrounding the alleged slapping incident with Johnson again. After explaining the incident, Plaintiff was advised that she would be suspended for three days for touching Johnson after he initially slapped her. Tolen and Thompson also met with Johnson when he reported to work that day. Johnson was also given a three day suspension for touching Plaintiff.

On October 11, 2007, Plaintiff's lawyer contacted Harcourt to discuss a workers compensation claim. Later that day,

---

[4] As with the police report, supra note 3, to the extent that the version of the confrontation described by eyewitnesses during the company's investigation differs from Plaintiff's account, we accept the Plaintiff's version as true for purposes of the instant motion. However, as we explain below, the fact that the company undertook some investigation, a fact not contested by Plaintiff, is relevant to the issue of the Defendant's response to the confrontation and the discipline it imposed thereafter.

Plaintiff sent a resignation letter complaining that she was punished and explaining that she did not want to be in the same place as her "attacker."  On February 28, 2008, Plaintiff filed a Complaint in New Jersey Superior Court - Law Division, Camden County, alleging claims of retaliation and sexual harassment.  Defendant removed the case to this Court on April 15, 2008 and now moves for summary judgment.

## DISCUSSION

**A.   Jurisdiction**

This Court has jurisdiction over Plaintiff's claims on the basis of diversity, pursuant to 28 U.S.C. § 1332(a).  Plaintiff is a citizen of New Jersey, while Defendant is a Delaware corporation with its principle place of business in Florida.  Further, the amount in controversy is alleged to be in excess of $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

Plaintiff's Complaint asserts claims against Defendant for both sexual harassment and retaliation in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -49.  The Court will first address Plaintiff's sexual harassment claim before turning to the retaliation claim.

**1.   Sexual Harassment**

Defendant asserts that it cannot be held vicariously liable for Johnson's alleged sexual harassment because Johnson is not a supervisor.  In order for an employer to be vicariously liable for the hostile environment created by an employee, the plaintiff must demonstrate that the person engaging in the harassment was a "supervisor" who was acting as the employer's agent.  See Lehman v. Toys 'R' Us, Inc., 132 N.J. 587, 619-20 (1993); see also Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).  An employer cannot be liable for harassing conduct between non-supervisory co-workers.  See Heitzman v. Monmouth Cty., 321 N.J. Super. 133, 146 (App. Div. 1999).

In determining whether an employee is a supervisor, the Court must consider "whether the power the offending employee possessed was *reasonably* perceived by the victim, accurately or not, as giving that employee the power to adversely affect the victim's working life."  Entrot v. BASF Corp., 359 N.J. Super. 162, 181 (App. Div. 2003) (emphasis added); see also Smith v.

Exxon Mobil Corp., 374 F. Supp. 2d 406, 421 n.37 (D.N.J. 2005). Relevant factors include the power to fire or demote, the power to direct job functions, and any evidence that the alleged harasser possessed influence to control the workplace or restrict the alleged victim's freedom to ignore the alleged conduct. Entrot, 359 N.J. Super. at 181.

The record is clear in this case that Johnson was not a supervisor.  Rather, he was an hourly employee with no power to hire, fire, promote, or demote other employees.  Moreover, he was in a different department than Plaintiff and had no ability to control her work environment.  Indeed, Plaintiff concedes for purposes of this motion that Johnson was not a supervisor or member of upper management as those terms are used in NJLAD jurisprudence.

Nonetheless, Plaintiff argues that even though Johnson was not a supervisor, Defendant can still be liable for his conduct because it negligently failed to promulgate an effective policy for preventing harassment in the workplace.  Plaintiff relies on Gaines v. Bellino, 173 N.J. 301 (2002) for the proposition that the mere existence of an anti-harassment policy alone is insufficient to defeat a harassment claim.  There must be, Plaintiff insists, an "unequivocal commitment from the top that [the employer's opposition to sexual harassment] is not just words, but backed up by consistent practice."  Id. at 319.

In <u>Gaines</u>, the plaintiff was forcibly kissed by her supervisor. <u>Id.</u> at 305. Although she did not file a formal complaint against her supervisor out of fear of retribution and the belief that nothing would be done, she did notify a number of other supervisory employees. <u>Id.</u> No action was taken, however, by any of these supervisory employees in response to the incident. <u>Id.</u> Indeed, on future occasions the supervisor joked with other high ranking officials in her presence about how he kissed her, and the officials laughed and covered their ears. <u>Id.</u> at 306. In a separate incident the plaintiff's supervisor told her that no one would believe her if he raped her. <u>Id.</u> This statement was made in the presence of other high ranking officials, at least one of whom agreed that no one would believe her. <u>Id.</u> at 306-307. In addition to the evidence that the defendant's supervisory employees were aware of the harassment and condoned or, at the very least, tolerated it, there was unequivocal evidence that numerous employees had received no sexual harassment training. <u>Id.</u> at 315. Given these circumstances, the New Jersey Supreme Court found that the fact that the defendant had issued a written sexual harassment policy was not sufficient to defeat vicarious liability. <u>Id.</u> at 317-18.

In this case, there is no such evidence that Defendant's sexual harassment policy was "simply words." Plaintiff concedes that Harcourt's employees were given a copy of its workplace

harassment policy on their first day of employment. Additionally, Plaintiff concedes that all employees received a brief training on the harassment policy as part of the new employee orientation program. This is a key distinction between this case and Gaines, where numerous employees testified that they received no harassment training whatsoever.

Further, while Plaintiff points to Defendant's response to the graffiti incident as evidence that its harassment policy was ineffective, that incident seems to show the opposite. Plaintiff does not dispute that as soon as the offensive graffiti was brought to Tolen's attention he ordered its removal and notified human resources. This response stands in stark contrast to that of the supervisors in Gaines who laughed at the harassing conduct and agreed with the harasser that no one would believe the victim if she complained. While Plaintiff argues that Defendant should have done more, its response appears to have been "reasonably calculated to prevent further harassment." See Knabe v. The Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) ("[T]he law does not require that investigations into sexual harassment complaints be perfect.")

The fact that Defendant's anti-harassment policy was more then mere words is further evidenced by its response to Plaintiff's complaint regarding the incident with Johnson. Immediately after Plaintiff reported the incident to human

resources, a thorough investigation was conducted. Johnson and all of the witnesses identified by Plaintiff were interviewed. Thereafter, Johnson was disciplined for his conduct. In the face of this evidence the Court finds that this case is distinguishable from Gaines and that no reasonable jury could conclude that Defendant did not have an adequate anti-harassment policy. There being no genuine issue of material fact regarding whether Defendant had promulgated an effective policy for preventing harassment in the workplace, or that Johnson was not a supervisor, it follows that Defendant can not be vicariously liable for Johnson's conduct as a matter of law. Summary judgment must therefore be granted against Plaintiff on this claim.

Even assuming *arguendo* that Defendant could be vicariously liable for Johnson's conduct, Plaintiff has failed to present any genuine issues of material fact capable of supporting a claim of sexual harassment. In order to state a claim for a hostile work environment under the NJLAD, the employee must show that the complained of conduct (1) would not have occurred but for the employee's gender, and that it was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment are altered and the working environment is hostile or abusive. Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 453 (N.J. 1993). When the harassing conduct is sexual or sexist in

nature, the first element will be automatically satisfied. Id. at 454. However, when the alleged harassment is not obviously based on the victim's sex, "the victim must make a *prima facie* showing that the harassment occurred because of her sex." Id. This can be done with a showing that the harassment was accompanied by other harassment that was obviously sex-based, or that only women were subjected to the harassment. Id.

Defendant argues that "there was nothing overtly or impliedly sexual" about the Johnson's conduct. Indeed, Defendant argues, "[n]either the language used nor the physical contact was gender based." In support of this position, Defendant points to the fact that when asked during her deposition whether there was any other evidence that the incident was related to sex "other than the fact that you were a female and he was male?" Plaintiff answered, "No." (Id. at 14.)

Plaintiff has failed to identify any evidence capable of creating a genuine issue of material fact on this issue. Although Plaintiff alleges in her Complaint that Johnson's slap "was motivated by concerns of sex and/or gender and was 'because of' Plaintiff's gender, inasmuch as the attack would not have occurred but for the fact the plaintiff was female," (Compl. at ¶¶ 4-5), the Third Circuit has made clear that such unsupported allegations, without more, are not enough to survive summary judgment, Saldana, 260 F.3d at 232. Plaintiff has presented no

evidence that only women were subjected to physical altercations by co-workers. Nor does Plaintiff offer any evidence of other, more obviously sex-based, harassment from Johnson. While the graffiti incident was undeniably sex-related, there is no evidence to suggest that Johnson created the graffiti or was in any other way associated with it. Accordingly, Plaintiff has failed to create a genuine issue of material fact with respect to whether Johnson's conduct was would not have occurred but for her gender.[5]

**2. Retaliation**

Plaintiff claims that she was retaliated against for having reported the alleged harassment. A claim of retaliation under the NJLAD uses the burden shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-05 (1974). See Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1087-88 (3d Cir. 1996) (holding that unlawful discrimination claims under the NJLAD "parallel" Title VII claims and therefore employ the same McDonnell Douglas framework). Under that framework, a plaintiff must first establish a *prima facie* case. To establish a *prima facie* case for a retaliation claim under the NJLAD, a plaintiff must show: (1) she engaged in a protected employee

---

[5] Although Defendant also argues that the alleged conduct was not sufficiently severe or pervasive, having already determined that no vicarious liability is possible and the issue was not gender related, the Court need not reach this issue.

activity; (2) the employer took adverse action against her after, or contemporaneous with, her activity; and (3) a causal link exists between her activity and the employer's action against her.  Muzslay v. City of Ocean City, 238 Fed. Appx. 785, 789 (3d Cir. 2007) (citing Abramson v. William Paterson College, 260 F.3d 265, 286 (3d Cir. 2001)).

Should a plaintiff establish a *prime facie* case, a presumption of discrimination is created and the burden of production shifts to Defendant to articulate some legitimate, nondiscriminatory reason for its actions.  Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).  "The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Id.  "The employer need not prove that the tendered reason actually motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Id.  This is a light burden.  Id.

Once the employer answers its relatively light burden by articulating a legitimate, nondiscriminatory reason for the unfavorable employment decision, the burden of production shifts back to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation was merely a pretext for its actions, thus meeting the plaintiff's burden of

persuasion.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 319 (3d Cir. 2000) (citing Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 2097 (2000)).

Even assuming that Plaintiff is able to establish a *prima facie* case for a retaliation claim under the NJLAD, Defendant has articulated a legitimate, nondiscriminatory reason for its actions.  After an investigation of the incident was completed, Plaintiff received a three day suspension for touching Johnson, who was also suspended for touching Plaintiff.  Plaintiff concedes that she was told by Tolen and Thompson that she was being suspended because she had touched Johnson.  Faced with this legitimate, non-discriminatory reason for being disciplined, Plaintiff has failed to present any evidence of pretext.  Accordingly, summary judgment must be granted against Plaintiff on this claim.

## CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment is granted in its entirety.  An appropriate Order will be issued.


Dated:  December 9, 2009         s/ Noel L. Hillman
                                 HON. NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey